I represent Mr. Nwobi in the trial below. And there are six separate Sixth Amendment issues that are briefed extensively. I am confident I'm going to run out of time, and I want to highlight for the court that the most significant three of the six, the first is the trash motion, which I'm going to address. Since you know what question I'm going to ask, since I asked it once before, doesn't your entire case really rise or fall with the trash motion? Some of the arguments do. The probable cause for the business premises and the peppercorn residence would be resolved if the magistrate were informed that marijuana clippings were found at the business that were taken from peppercorn. So the answer is yes, I do want to address the trash motion because without those facts there's no probable cause for any of the four locations that were covered by the single warrant. The trash search was warrantless. And the essential issue is whether or not Mr. Nwobi had a reasonable, a subjective expectation of privacy, which I don't think is disputed, that society accepts as objectively reasonable. Just the fact that Mr. Nwobi would deposit marijuana clippings in the business trash and take them from peppercorn, where it would be a curbside trash, shows his subjective state of mind. But the objective reasonableness of that, of his expectation of privacy, is a curtilage analysis. The trash container is 18 inches from the building. Mr. Nwobi is the sole occupant of the building. This is a commercial premises, right? Right. Is there a case that recognizes that it's curtilage around a commercial? Yes, there are. There are several. And while I get those sites out and we've – Have we ever? Has the Ninth Circuit ever addressed that? Well, the Ninth Circuit has not – the Ninth Circuit has repeatedly recognized that businesses – They have. They – Right. And there is a curtilage analysis appropriate for business when affirmative steps are taken to exclude the public. So that's the standard. So in the cases where the Ninth Circuit has addressed curtilage in a business context, there have always been public access, ready access to the premises. So, for example – There was public and ready access to this place, wasn't there? But there wasn't. That's – At least on the day end. At least the cops got in. The gate was locked. Well, the gate was open on that day. And there is a Second Circuit opinion or district court opinion from Southern District of New York directly on point. The inadvertent failure to close a door does not make a business open to public. There was another business area next door. But there wasn't. It wasn't occupied, but – Well, I understand why the Court would get that impression from the government briefing, because the government repeatedly refers to the premises where the container is located as a common area where all tenants have access. And cites a series of cases, all of which there were multiple occupancy – So your argument is there was nobody else occupying this premises? There was nobody else occupying. And the other premises was gated at all times. And Mr. Mulby left one gate open on the day of the officer's intrusion. So let me – let's just back this up. We have a dumpster in a, you know, in an area right next to the building where I take it, the waste disposal service comes in and picks up the dumpster and dumps it into a truck. A privately contracted – A privately contracted waste disposal service.  And those two facts alone you think are not enough to establish that there's no objective expectation of privacy? No, because the waste service prohibits any employees from rummaging in the trash. There's an ordinance in place. And more importantly, I mean, it's a private – it's a private service. And I think the Court would properly analyze this as what if the gate was locked on the day? If the gate had closed, officers then would have climbed over a gate, gone 85 feet into a private premises and rummaged through the trash. At the time when – on trash day or the time when the container is conveyed to the curb, the analysis would be different. On this day, when the officers did the analysis, is it objectively reasonable that Mr. Mulby would not expect the public to have access to that trash container? Did the – did the officers know what day trash collection day was? No, but they knew that this trash container was adjacent to the entrance of the building. I guess my question is if you think somebody has put evidence into the trash and you think the trash might get collected the next day or promptly, do you have the – do you have to – does that provide you with the opportunity to go look into trash without a warrant? Well, no. I mean, that would be a dramatic holding to say that if – but even the U.S. Supreme Court cases in California and Greenwood don't hold that by definition, all trash or containers that are being conveyed to third parties are – it's objectively unreasonable to have an – a subjective expectation of privacy. Packages are conveyed to third parties all the time, and the courts affirm that there's still a subjective – But we're not worried about this objective. Obviously, he thought nobody was going to discover this. That's why he put it in trash bags and threw it away. The question is whether there's an objective. Right, whether it's objectively reasonable. And I just don't – I just think it would be too far of a stretch to say by definition, if an opaque trash bag is deposited in a trash container, regardless of where it is, there's no objectively reasonable expectation of privacy. In this area where the trash container is, that's the only thing that's there, right? Well, there's stairs to the front door. There's nothing – there's no access to the public. Right. So you're not getting into the building or seeing anything that might occur in the building if you go to the trash container? No. I just wanted to picture it where I'm at. So your whole point is that what makes this different here, or the affirmative acts on the part of your client, part of the defendant, Nobby, was that he only had – it was just his business, correct? It's gated. It's gated. There was a private property sign on the premises. Did the judge make a finding that there was a property – a private property sign?  Well, there was – there was no substantial evidence that there was. But, okay. So there's a gate around it. There's a gate around it. That's undisputed. The gate happens to be open, but normally – I mean, the gate opens and closes. Does that make a difference? I mean, it doesn't. That's the Zang case. We cited a case, for example, where a business left its front door open, file cabinets unlocked in – Front door is a little bit different than a gate to a common parking area. But the holding is that the inadvertent failure to lock or close doesn't make the subjective expectation – a business's subjective expectation of privacy. How is the gate – how is that front gate secured? Was it – Is there any evidence? I mean, do you take a lock, a hand lock with a key and lock it, or – That wasn't – Do you need a clicker to – That wasn't factually developed. I – But it's open. It was open that day. It was open on that day. It's not just unlocked, but it's open at the time. Right. It failed to close it. So, you know, given that I'm eight minutes, I think that really the factual circumstances of the sole tenant and the sole gated premises makes this case worthy of cartilage protection for the trash. Assume for purposes of the rest of your argument that you don't win on the trash exclusion. Okay. Tell us what other winning arguments there are. So the strongest three arguments are the probable cause for the crest in property, which is key. There is nothing. The affidavit is 100 percent completely silent on any nexus between the place where the cell phone was searched and seized and criminal activity. And the second – Was that the one that was his address? I mean, his residence? It was his residence. But the only facts in the affidavit at all were that on two mornings his car was parked in front, one at 8 a.m. and one at another time. And this amorphous quote that I would have developed to be untrue, I believe, in a Franks hearing, that he was generally stayed overnight there. Okay. But let's assume that it's a place that he's seen going to and from before the search and the search is okay. Right. Isn't that enough to search the residence? No. As a matter of law, it is not. It can't be. If Mr. Nwobi stopped at a friend's house to drop off the mail, is there probable cause to search that location where Mr. Nwobi dropped off the mail? No, but if there's some evidence to support the proposition that he stays there, he's coming back and forth, and we found that he's just dropped two bags of marijuana someplace, why doesn't that give us the police probable cause to search that location? First of all, it's very easy to establish whether a residence is a residence. I mean, the law enforcement did nothing to do surveillance other than those two occasions where they saw his car parked there. So I respectfully submit that the conclusion was that it was Mr. Nwobi's residence was reckless. But there has to be some nexus to criminal activity that's lacking simply by showing that Mr. Nwobi twice was at the Creston place. That's the problem with the affidavit. There's no active investigation whatsoever. The officer just concludes that this is a place where Mr. Nwobi for a 10-day period generally stayed overnight, and I wanted to develop that factually and was not permitted to, and then the conclusion that drug dealers keep drugs in their residences. I mean, that's basically it, and I think that's woefully insufficient. So what would be suppressed if the Creston residence? The cell phone. Cell phones. Did anybody make a motion to suppress the cell phones at trial? Yes, I did. At trial? Well, yes. Well, so the third. Because what happened here was, as I recall, the government said during the motion to suppress stage, we're not going to put the cell phones in. And then they put them in at trial. And so that's the Creston evidence, is it not? That is. Okay. And then my question is, was an objection made at trial to the admission of that evidence? Yes. I want to address that directly, because the answer is yes, and it was a hearsay objection, and there was a discussion with the Court about I didn't even expect this to be an issue. But I want to highlight for the Court the – There was no Fourth Amendment objection. There was a written filed suppression motion. Right. And the case law is clear that the Court may address the merits of the suppression motion for good cause, even if there's no objection made at trial, and I submit as a backdrop, at a minimum, the Court should address the merits of a suppression motion. So your position is what we ought to do is say we ought to go back and look at the Fourth – at the suppression motion and see whether it was correct or not? Yeah. I believe that the government deceived the Court and deceived defense counsel. And what the government is now trying to do is capitalize on a deception, because what they said – Deceivers are pretty strong. I know. I know. And that's why the – I thought the problem was they wanted to impeach. No. That's not – Mr. Roby's testimony about the name – the person who he received a text message from. No. No, that's – no. That's not – Whether he knew a – whether he knew a person by the name. No. Not even the government will – will argue that. They – what they want to do is they have some text messages, apparently, where there was a conversation using the name Nate. One of the deceptions in the warrant was these citations to wiretap calls where the happened. So what – it's not me, it was the defense. And the government wanted to introduce text to say that here on this phone, the person making the – having the conversation is named Nate, therefore, Nathan Nwobi, the defendant, is the person who used the phone. They couldn't link the phone to Mr. Nwobi. And so that's where the text messages came in. Instead of using that because the text messages were recovered from a computer and that evidence was suppressed, the government then went to Plan B. And Plan B was equally offensive to Fourth Amendment principles because it involved a search. The phone was opened up, the container, which contained an IMEA number on the inside. I found it with the outside. So the way the government set this up was we're not going to use anything from inside the cell phone. And now in their briefing, they're trying to say, well, what we meant was digital evidence. And the court, they're blaming now Judge King for reaching too far from their own representation. That's not fair to blame the district court. They actually, in their briefing, argue that the district court would have sui sponte suppressed the evidence if he had known it came from – there was something wrong with it coming from inside the phone. But the timetable – I used the word deception. And by the way, these particular prosecutors are very honest people. I've known them for 15 years, and I don't think it was intentional, so I want to change my label. That was wrong. They were just false. And they, with good hearts, maybe just misstated the facts to the court. But they knew in January 2011 that they were going to be using the IMEA number for – from this phone. I didn't know that. The court didn't know that. We moved – that late-produced evidence was produced, and we promptly moved to suppress the cell phone evidence on March 27th. The hearing was on April 2nd. It was at the hearing that we first got cell site data, which became the linchpin of the government's case. And at that same hearing, the government said the cell phone doesn't have any evidence other than it's a cell phone. And then after that hearing, the – before the court's ruling, they produced the property receipt, which is what we objected to as hearsay grounds. Then the court ruled that they later, after the government's revealing this IMEA number the court denies the motion as moot. And then we start trial a few days later. So – but I want to get – I want to get – and I know you're running out of time. I want to get the chronology straight here. There's a suppression hearing in which the judge essentially says, well, if they're not going to introduce this, it's moot. I don't need to rule on this. It comes in at trial. They introduce it. And you make a hearsay objection. Correct? One fact. It comes in after the sidebar. So the agent then goes back on the stand. And then my question is, was there ever any occasion when you said to the district judge, oh, my God, I didn't know this was going to come in. I had a Fourth Amendment objection to it. I didn't renew it at trial. Could you please look at that now? Did you get a new trial motion or anywhere? I did not, no. Okay. No. And really, shame on me, I guess, for believing the government. But the court has to understand that this is unfolding during the trial in front of the jury. They're watching. I'm getting overruled again and again and again on different issues. And at some point in time, this is unfolding in real time. When the government really shouldn't have signaled, don't worry, we're not looking inside the phone. I thought that IMA number could have been something you get from outside the phone. But you're right. I perhaps should have stopped the trial, asked the court to, you know, excuse the jury. Let's reconvene on a suppression hearing. And then, hopefully, the judge would have been able to do that. And you're out of time. But this all turns on your initial contention that there's no probable cause to search the residence in the first place. Well, that's another basis for keeping the cell phone out. But in the briefing, the court will see that there was no authority to seize the cell phone. The cell phone was a seized item that was taken pursuant to the warrant with no authority in the warrant and then searched without a follow-on warrant. So the cell phone has three different reasons why that evidence should not have come  Thank you, Your Honor.  Thank you. Good morning, Your Honors. Rasha Gerges on behalf of the United States. May it please the Court. This Court should affirm these convictions in this case because the government did not present any evidence at trial that was obtained in violation of the defendant's Fourth Amendment rights. First, with regards to the trash search, I think the Court noted that there are no real cases in the Ninth Circuit recognizing business curtilage, if you will. And this is a case in which there was an open dumpster that was not locked on the day of the search. It was behind an open gate that was also not locked. And the only thing the officers had to do, they could see it from the sidewalk. Detective Marty had indicated that he had been conducting surveillance from across the street and could see the defendant throwing the trash away easily visible from the street side. So we have a commercial dumpster that is not restricted at all. Would it make a difference if the gate was locked? If the gate was locked, it would make a difference in terms of the finding that it was easily accessible to the public. Then at that point, the Court, this Court would have to determine the length as to which this Court would hold the Greenwood alternative reason for finding that there was no expectation or reasonable expectation in the trash and that it was being out for collection for the express purpose of giving it to a third party. So in that case, even if the gate was locked, there could be a situation in which the officers could have just obtained permission from waste management employees to give over the trash. So here, so that is why trash is a particularly unique type of property that you have to do, take affirmative steps in actually to retain your expectation of privacy. So if Mr. Nawabi had put these inside his office in the trash can, you wouldn't be able to get to them, would you? That's correct. For the loading area, there was a gate there, like a loading dock area. If it was not accessible to the public. A garage door. There was a garage door sort of like next to the office entry. That would probably fall closer to what has been recognized as potential curtilage. If it is part of the actual business, it's not in a shared common parking lot, or anything of that nature, then I think that that might fall within. Well, curtilage is a strange term here, because if this were a residence, all these facts were exactly the same, and this were a residence, this would be in a legal search, wouldn't it? Not according to the cases involving shared apartment complexes, such as. . . If this was his home, and only his home, and he had a dumpster in a driveway with a gate to it that was left open and the dumpster was open, you'd need a warrant. Yes, Your Honor. Absent some other exception. Yes, Your Honor. That would be a constitutionally protected area that the officers should not invade without a warrant. But here, there is no constitutionally protected area. But it's not because it's not in the current. . . See, I find curtilage a difficult term here. If we had business curtilage, this would be within the curtilage of the business, would it not? I mean, if you recognize the concept of business curtilage, this would qualify for curtilage, wouldn't it? No, Your Honor, because there are a number of factors that you have to consider in determining whether a part of the property is curtilage or not. And the courts that have recognized it, I believe the Sixth Circuit and the Eleventh Circuit, have both discussed the idea of business curtilage. And they said you could only protect. . . There may be some parts that are surrounding a business that is. . . It's because it doesn't have. . . . . is private enough. Yes, but my problem is transferring the concept of curtilage to businesses. It seems to me the real question is whether there's an objective expectation of privacy. And, Your Honor, the government would submit that on the specific facts in this case where you have an unlocked dumpster behind an open gate, it's irrelevant whether he normally closed the dumpster or normally closed the gate. That was not the point. That the day of the search, it was easily accessible, and therefore, there is no objective reasonable expectation of privacy in the trash that was searched. And therefore, the court, the district court properly found that the defendant had not met his burden of demonstrating a subjectively reasonable expectation of privacy in that. So was there PC to search the Creston? Was it Creston? Is that the. . . The Creston residence? Yes, Your Honor. That was. . . There are a number of facts in the affidavit. This is far from a bare-bones affidavit in this case. There were a number of facts that it's true that you have to look at each residence in particular to determine whether there's probable cause, but that does not mean that you cannot look at all of the facts, especially when the residences are interconnected. And the affidavit established that the residences were interconnected by the defendant's own conduct because he would regularly travel to all four locations. Is regular presence sufficient to establish a nexus when what you're really looking at is you have, at that point, evidence that was found in the trash search and regular presence? And is that sufficient to establish a nexus to search the Creston residence? Based on the facts here, there was a CI who indicated that the person responsible for the grow houses did reside in the Hollywood Hills where the Creston residence was located. The defendant was seen driving into the Hollywood Hills on the day right after he had dumped the marijuana clippings in the business dumpster. His Ford Bronco, which is registered to him and was seen on surveillance of him driving, was seen in the early morning hours on surveillance. One day it was 6 a.m. Another day it was 8 a.m. And the affidavit says that during the 10-day period prior to the search warrant, it observed that the defendant generally stayed there overnight, where this is a person residing at that location. And the affidavit also indicated that there was the defendant would travel to all four locations on a nearly daily basis. All right. So I understand that what you're arguing is regular presence in a location is sufficient to make a claim that you're likely to find contraband in searching that place. I believe there are cases that indicate that it is reasonable. Again, is there a reasonable nexus? Is it reasonable to look for evidence of drug trafficking in a location where the defendant resides? And this is one of those instances by showing that he had been there in the early morning hours. So I think it's reasonable to look for evidence of drug trafficking in a location where that is in fact a residence. So discuss, if you would, the cell phones that were seized at the residence. And tell me, was my recounting before of the very abbreviated history correct, that there was a motion to suppress, some representation was made by the government, don't worry about these, we're not going to introduce them, and the judge said it's moot, and then something was introduced at trial? Close to that, Your Honor. Where am I wrong in that chronology? First, there was a motion to suppress, and the motion specifically indicated that it sought to suppress recently produced discovery. That was not the AT&T records. The hearing never covered cell site records at all. Those were documents obtained from AT&T. It had nothing to do from the phone that was seized from the defendant's residence. So at the hearing, the entire issue was whether these recently produced evidence, which consisted of photographs and cellular, it appeared to be cellular text messages, should be allowed in. And those photographs and the text messages came from one of the computers that was seized from the defendant's residence. So at the hearing, the judge is like, well, I just don't understand, and why is the cell phone necessarily, did you get this information from the cell phone? And he said, no. We realized later that although they are cellular texts, it was actually obtained from the computer, not the cell phone. That was the entire representation that was made. So what part of the defendant's motion to suppress? In other words, he brought a comprehensive motion to suppress to the judge. What part of the motion to suppress did the judge not rule on, either based on what you told him or his mistaken apprehension of what was going to be introduced? The judge indicated that he was not going to, because the government was not intending to produce evidence obtained from the cell phone, because it came from the computer, he did not reach the issue of whether a later search of the cell phone or anything like that would be required, because the government was not introducing that. And I think that is separate from to them. What happens at trial? What do you introduce at trial? At trial. And first, Your Honor, I would like to – I know this sounded like it was an ambush or something at trial. Never, never thought of that. Well, he's not alleging misconduct. I'm just trying to find out whether the judge got the rule on his objections. In the papers, he did allege misconduct, which the government takes very seriously, Your Honor. And that was definitely not our intent. And in fact, on the first day of trial, before jury selections, we provided the defense with all of our exhibits. And this is – it was a four-day trial, and I believe exhibit – there were 75 exhibits. Most of them are photographs and transcripts of calls. But the property of receipt was in that exhibit. We also provided him with a copy of the government's PowerPoint for its opening statement. And in that, it talked about cell records. And the judge even said, are you introducing – are you going to be introducing cell records? Yes, Your Honor. And that was never objected to. And the judge specifically asked the defense, when he had all of the exhibits in front of him, whether he had any objection to the exhibits. And he said, well, I just got them, and I don't know. He said, okay, well, look at them, make sure – so we could try to not waste the jury's time. And, again, this was the morning of the first day of trial, before we did anything. Then, opening statement. This – the government. I was – I was counsel who provided the opening statement. I specifically said to the jury that they would hear testimony about items seized from the Creston residence, including a cell phone, and that they would learn that that cell phone that was obtained from his bedroom was the same exact cell phone that was intercepted on the wire. No objection. Had he objected at that time or during recess or during any of that time, the judge could have – if he found that we were in violation of some order or made some representation, he could have stricken them. And then we would not have introduced anything at all during trial. Or he could have just instructed the jury, argument of counsel is just argument. You can't – it's not evidence. And then we would not have put anything in the – in at trial. And then at trial, when we do provide it, again, she – Special Agent Perkins testified on the second day of trial. And on – and, again, he had all of the exhibits with him that first day and never objected. And – or never even came to us and said, hey, how are you going to get this in? I thought this was excluded. Nothing. And then – then Special Agent Perkins testified. And, again, the only objection that was raised was a hearsay objection. The judge specifically – and my colleague represented at sidebar the exact reason why we were introducing that property receipt, to indicate that there was the same phone that was intercepted on the wire found in his residence. And defense counsel indicated, I'm not making a relevance objection. I'm arguing that this is hearsay. And he said, I didn't expect this to be an issue relating to the hearsay issue. And then he argued hearsay. And the judge overruled his argument. He never raised at that – again, if it was such a blatant misrepresentation or some obvious error that was occurring, that would have been the time to say it. And, again – I'm sorry. And when Special Agent Perkins then testified about how the IMEI was obtained, which is just the removal of the battery. It's not an invasive search, such as going into digital data that courts recognize as needing to do it, you know, soon after the seizure or anything like that. This is just a serial number, similar to obtaining the serial number from a firearm, such as the case in Mines. And so – and, again, she testified, and the defense never objected at all. Not the next day, not the following day. This was a four-day trial. Never objected. And, again, that could have prevented us from raising or making more of this during closing argument. That never happened. And even after the defendant – Let me interrupt for a second here, because I understand that you're – want to be spirited and defend yourself against undoing any misleading. Here's the problem I have, and I want to see how you respond to it. There was a motion to suppress here, and the defense said, I would like to suppress certain items. And at some point, the judge said, well, I don't need to rule on part of your motion because it's moot. And now the defendant is saying, well, I had a legitimate Fourth Amendment objection to these things, and the judge – either that judge or you three judges should rule on that Fourth Amendment objection. Do you disagree with that? Your Honor, the – Wait. I know you disagree that it's an objection that we should sustain, but shouldn't we address that objection? Again, this would have been the best objection to raise when something could actually have been done before the disappointment of the judge. Your argument is that notwithstanding the fact that he filed the motion to suppress and the judge said, I don't have to get to part of that because based on whatever the government just told me, it's moot. And he waived any Fourth Amendment objection to the introduction of whatever piece of evidence he now objects to by not objecting to trial. And I believe that there was not good cause for that – for that reason, because there were many opportunities throughout the trial. Even when the defendant was being remanded into custody, there was an issue. The judge has to determine whether there is a substantial likelihood of a new trial being granted or anything. The defendant stayed silent again at that hearing, which indicates that there was no – no misconduct or no claim that he – even no one in the district court thought that what the government was doing fell within the scope of the defendant's previously filed suppression motion. Well, what about the – the claim, was it ever presented clearly and then not ruled on because rendered moot that the phone had been unlawfully seized at the Creston residence? And see, everything falls apart after that. If – if the defense prevails on that, everything else on the IMEI number falls apart. Because, you know, the idea is it's an inventory search to make sure we gave back the right property and we're protecting the right property. But if you were never supposed to seize the phone, if the search warrant didn't authorize the seizure of the phone, having the phone in your possession, you shouldn't have it in your possession in any event. And even though all you've done is taken a serial number, this IMEI number, for the purposes of saying this is the phone we have, it turns out to be a linchpin of an argument. It may not be all that important in your case if you look at the great big picture. But clearly in your argument, much was made of it at the end. And my question is, did someone actually present – the defense actually present a motion to suppress the phone because it was illegally seized and then there was a determination that that question was rendered moot? And if that's the case, shouldn't somebody have at least made that determination? Your Honor, I know my time is up. May I briefly? Yes, go ahead. Thank you, Your Honor. First, the defendant did raise in his suppression motion the idea that the cell phones were improperly seized. And at the hearing, he specifically said, oh, yes, there was no basis, no probable cause at all to seize either the computers or the cell phones. And Chief Judge King said, let me stop you right there. That's not true. I see the cell phones as being different because there were a number of factors that he listed. And defense counsel on ER 199 to 200 said, I could understand the Court's distinction because the affidavit does have the points the Court just articulated, which suggests that the cell phones by some members of the – suggests that cell phones were being seized. And I just want to say that the evidence that was suppressed was not ruled upon because it was moot because the government was not seeking to introduce evidence of it. But I think with regards to the seizure of the cell phone, I think the defendant's statement in connection with what the Court was finding was a concession by the defense that the phones did stand in a different light than the computers and that there was reason to seize it. And the cell phones did – again, this was a wiretap case. The affidavit indicated reasons why cell phones were being used. And I think even the defense conceded that at the hearing. Okay. Thank you, Your Honor. We need your time. Let's see. Do we have any time for rebuttal? I think there's a minute. Thank you, Your Honor. Thank you very much. Because I do want to direct the Court to the briefing on the cell phone suppression issue. It is actually consistent. We were seeking – we argued to the district court that the cell phone was improperly seized. It wasn't an item to be seized. It wasn't permissible for officers to take it. And if they wanted to search it months later, they would have needed a follow-on warrant. The error, if there was any, was that I didn't see the part of the order at the time the Court ruled denied as moot. I saw it denied. And I proceeded through trial on a fully filed and preserved motion that was denied. And so I'm dealing with hearsay objections and other reasons as best I can in the trial. But the lynch pin was the IMEA number. The government is saying that the AT&T records and cell site information came from another source. I agree. A cell phone was used. It just wasn't tied to the defendant. And they only tied it to the defendant with the IMEA number that tied to the cell site records. Okay. Thank you. We appreciate your arguments. The matter is submitted at this time.
judges: Erickson, Paez, Hurwitz